UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V. and PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED,<br><br>                    Plaintiffs,<br><br>                 - against -<br><br>PDVSA US LITIGATION TRUST, ALEXIS ARELLANO BOLIVAR a.k.a. ALEXIS ARELLANO, VINCENT ANDREWS, EDWARD P. SWYER, PETRÓLEOS DE VENEZUELA S.A., and ALGAMEX LTD a.k.a. ALGAMEX ROME LTD a.k.a. ALGAMEX,<br><br>                    Defendants. | Civ. No. 18-6171<br><br><br><br><u>**COMPLAINT**</u> |

Plaintiffs ConocoPhillips Petrozuata B.V. and Phillips Petroleum Company Venezuela Limited (together "ConocoPhillips"), by their undersigned attorneys, and as for their Complaint against the PDVSA US Litigation Trust, its trustees, Alexis Arellano Bolivar a.k.a. Alexis Arellano, Vincent Andrews, and Edward P. Swyer (the "Trustees"), Petróleos de Venezuela, S.A. ("PDVSA"), and Algamex Ltd. a.k.a. Algamex Rome Ltd. a.k.a. Algamex ("Algamex") (collectively, the "Defendants") allege causes of action for fraudulent conveyances as follows:

<u>**Nature of the Action**</u>

1.      In 2007, the Bolivarian Republic of Venezuela ("Venezuela") confiscated ConocoPhillips' investments in major oil projects, worth billions of dollars, without paying any compensation. ConocoPhillips since brought arbitration claims against Venezuela, the national oil company of Venezuela, PDVSA, and two PDVSA affiliates. In the arbitration against PDVSA and its affiliates, a tribunal of the International Chamber of Commerce ("ICC") awarded

ConocoPhillips approximately US $2 billion (the "ICC Award").  Plaintiffs' petition to confirm, recognize and enforce the ICC Award is now pending before this Court in Case No. 18-cv-03716 (S.D.N.Y. 2018).

2.      PDVSA has not satisfied the ICC Award.  Instead, as described further below, PDVSA has engaged in a long-running campaign to remove or transfer assets that would be subject to collection by ConocoPhillips.  For example, during the pendency of the ICC arbitration, PDVSA engaged in a series of transactions designed to liquidate value from its wholly-owned subsidiary CITGO Petroleum Corporation ("CITGO") in the United States and remove it to Venezuela.  And more recently, PDVSA appears to have also fraudulently transferred certain assets in the Dutch Caribbean islands off the coast of Venezuela, that were or that would otherwise have been subject to conservatory attachment orders obtained by ConocoPhillips under Dutch Caribbean law to satisfy the ICC Award.

3.      PDVSA has discovered another large asset that would be subject to collection by ConocoPhillips: namely, multi-billion-dollar civil causes of action in the United States against numerous defendants, for allegedly defrauding PDVSA.

4.      PDVSA claims to have uncovered a vast conspiracy among more than two dozen oil traders, oil companies, banks, and PDVSA employees that defrauded PDVSA through hacking PDVSA's computer systems, fixing bids, paying bribes, and other misconduct.  That conspiracy is detailed in a complaint seeking the recovery of billions of dollars from members of the "Helsinge Enterprise," brought on behalf of PDVSA before the United States District Court for the Southern District of Florida, in Case No. 18-cv-20818 (S.D. Fla. 2018) (the "PDVSA Florida Action").  The complaint filed in the PDVSA Florida Action (the "Trust Complaint") is appended hereto as Exhibit A.

5.      But because those valuable causes of action against the Helsinge Enterprise would be subject to execution by PDVSA's creditors, including ConocoPhillips, PDVSA attempted to insulate them, and the proceeds therefrom, from eventual collection by its creditors.  PDVSA engaged two New York-based law firms, Boies, Schiller Flexner LLP ("Boies, Schiller") and Meister Seelig & Fein LLP (together, the "New York Law Firms"), and in July 2017 conveyed the causes of action into a New York trust, the "PDVSA US Litigation Trust," created for that purpose (hereinafter the "New York Trust").  The "PDVSA U.S. Litigation Trust Agreement" (hereinafter the "Trust Agreement") is appended hereto as Exhibit B.  Pursuant to the terms of the Trust Agreement, the Defendants agreed that the New York Trust would transfer up to 66% of any proceeds from the PDVSA Florida Action to the New York Law Firms.   To further avoid bringing any assets into the United States and to fund the litigation against the Helsinge Enterprise, upon information and belief, PDVSA also transferred an interest in the PDVSA Florida Action to a third-party litigation funder acting as or through Algamex and agreed that the New York Trust would transfer some portion of the litigation proceeds to Algamex.

6.      PDVSA conveyed its valuable causes of action into the New York Trust, and caused the New York Trust to undertake obligations to transfer proceeds from the PDVSA Florida Litigation, with the intent to hinder, delay, or defraud PDVSA's creditors, including ConocoPhillips.

7.      PDVSA's fraudulent intent was confirmed by remarks made by David Boies of Boies, Schiller, when he stated that "the beneficiary of [the PDVSA Florida Action], if there are any gains, will be the PDVSA headquarters in Caracas[,] the trust will collect the amount and keep it under custody to be delivered to PDVSA [and] none of PDVSA's creditors can seek to collect its debts through the [New York Trust] because [the New York Trust] is a legal entity that has the

3

ability to keep the funds under its custody." *See* Maibort Petit, *MiamiDiario.com*, "Inner workings of the claim that could complicate the future of PDVSA," Mar. 11, 2018 (Translation from Spanish).  A true and correct copy of this article is appended hereto as Exhibit C.

8.      Under New York law, PDVSA's conveyance of its valuable causes of action also was fraudulent because it was made to the New York Trust without fair consideration while PDVSA was incurring debts beyond its ability to pay them.

9.      ConocoPhillips seeks declaratory relief, the restraint of further transfers, the appointment of a receiver to take charge of the property of the New York Trust, the avoidance of interests transferred pursuant to the Trust Agreement and related agreements, and any other relief which the Court determines the circumstances of the case may require, including but not limited to all of the remedies available under Section 279 of New York Debtor and Creditor Law.

## Parties

10.      Plaintiff ConocoPhillips Petrozuata B.V. is a subsidiary of ConocoPhillips Company and a Dutch company.

11.      Plaintiff Phillips Petroleum Company Venezuela Limited is an indirect subsidiary of ConocoPhillips Company and a Bermuda company.

12.      Defendant PDVSA US Litigation Trust is a New York trust established under New York law.

13.      Defendant Alexis Arellano Bolivar (believed upon information to refer to Alexis Arellano) is a Trustee of the New York Trust, appointed pursuant to the Trust Agreement.  Mr. Arellano is believed to be the General Business Manager of Venezuela's Petroleum Ministry, residing in Venezuela.

14.     Defendant Vincent Andrews is a Trustee of the New York Trust, appointed pursuant to the Trust Agreement.  Mr. Andrews is believed to be associated with Private Capital Advisors, Inc., residing in New York.

15.     Defendant Edward P. Swyer is a Trustee of the New York Trust, appointed pursuant to the Trust Agreement.  Mr. Swyer is believed to be associated with The Swyer Companies, residing in New York.

16.     Defendant PDVSA is Venezuela's national oil company, owned by Venezuela and headquartered in Caracas, Venezuela.

17.     Defendant Algamex (believed upon information to refer to Algamex Ltd and/or Algamex Rome Ltd) is responsible under the Trust Agreement to fund the fees, expenses, and costs of the New York Trust.  Upon information and belief, Algamex Ltd is a Cyprus entity affiliated with an Isle of Man entity of the same name, and for which Algamex Rome Ltd may be a successor.

## Jurisdiction and Venue

18.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330 & 1367.  PDVSA is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603, that is not immune from jurisdiction under 28 U.S.C. § 1605 because this action is based upon PDVSA's and its agents' commercial activity in the United States, PDVSA's and its agents' acts in the United States undertaken for commercial activity elsewhere, and PDVSA's and its agents' commercial acts which have caused direct effects in the United States.

19.     The Court has personal jurisdiction over PDVSA pursuant to 28 U.S.C. § 1330.

20.    The Court has personal jurisdiction over the New York Trust, Defendant Vincent Andrews and Defendant Edward P. Swyer because they reside in New York or are otherwise subject to personal jurisdiction in New York.

21.    The Court has personal jurisdiction over PDVSA, the New York Trust, each of the Trustees, and Algamex pursuant to N.Y. CPLR 302, because they have transacted business, supplied services and/or have purposefully undertaken activities in New York substantially related to the claims in this action.  Further, PDVSA, the New York Trust, and each of the Trustees has consented in the Trust Agreement to New York jurisdiction for any action or proceeding relating the New York Trust.

22.    Venue is proper pursuant to 28 U.S.C. § 1391.

## Plaintiffs Are Creditors of PDVSA

23.    From the 1990s to 2007, ConocoPhillips participated in major oil projects in Venezuela.  After Venezuela confiscated ConocoPhillips' interests in those projects worth billions of dollars, without paying any compensation, ConocoPhillips brought arbitration claims against Venezuela, the national oil company of Venezuela, PDVSA, and certain PDVSA affiliates.

24.    In 2007, ConocoPhillips brought an arbitration claim against Venezuela before the World Bank's International Centre for Settlement of Investment Disputes (the "ICSID Arbitration").  In decisions rendered in 2013 and again in 2017, a tribunal in the ICSID Arbitration determined Venezuela was liable for illegally expropriating ConocoPhillips' interests in three oil projects.  The ICSID quantum award is pending.

25.    Separately, in October 2014, ConocoPhillips brought the ICC arbitration against PDVSA and two PDVSA affiliates, asserting multi-billion-dollar claims for breach of contract and for partial indemnification for Venezuela's confiscation under several agreements and guarantees.

26.     On April 24, 2018, the tribunal in the ICC arbitration rendered the ICC Award in favor of ConocoPhillips and against PDVSA and its affiliates for approximately US $2 billion, in *Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela, S.A., Corpoguanipa, S.A. and PDVSA Petróleo, S.A.,* Case No. 20549/ASM/JPA (C-20550/ASM).

27.     On April 26, 2018, the Plaintiffs filed their petition before this Court to confirm, recognize and enforce the ICC Award, in Case No. 18-cv-03716 (S.D.N.Y. 2018).

### PDVSA's Campaign to Hinder, Delay or Defraud

28.     During the pendency of the arbitrations against Venezuela and PDVSA, PDVSA undertook to liquidate its assets in the United States that might otherwise be subject to eventual collection by ConocoPhillips on its arbitration claims.

29.     Beginning in 2014, PDVSA first tried to sell Houston-based CITGO, its largest single asset outside of Venezuela, in order to liquidate and remove the value of CITGO from the United States (where it would be subject to enforcement) to Venezuela (where it would not be subject to enforcement).  According to statements attributed to officials with Venezuela's Ministry of Energy, the sale was motivated by concerns that international arbitration tribunals would soon be awarding ConocoPhillips and other claimants compensation for their stakes in Venezuelan oil projects that were expropriated in 2007.

30.     When the effort to sell CITGO failed, beginning in 2015, PDVSA instead caused the subsidiaries through which it owns CITGO to issue billions of dollars in new debt, and to swap old debt for new, using the equity in and the assets of CITGO as collateral.  Without giving CITGO or its immediate shareholders (two closely-held Delaware corporations) any consideration in return, PDVSA took all the cash proceeds to Venezuela.  PDVSA also used millions of dollars of

CITGO assets to pay off PDVSA's trade debts, giving nothing to CITGO in return, and pledged all the remaining equity in CITGO's Delaware owners as collateral for a new US $1.5 billion loan from a unit of a Russian state-owned oil company, giving nothing in return.

31.     As alleged in the pleadings filed in two fraudulent transfer actions pending before the United States District Court for the District of Delaware, Case Nos. 16-cv-904 (D. Del. 2016) & 17-cv-28 (D. Del. 2017), all of those transactions were undertaken by PDVSA with the intent to hinder, delay or defraud PDVSA's creditors, including ConocoPhillips.  The amended complaints in those Delaware actions are appended hereto as Exhibits D and E and those allegations are incorporated as if set forth in full, herein.

32.     After the ICC Award was rendered, PDVSA appears to have also fraudulently transferred certain assets in the Dutch Caribbean islands off the coast of Venezuela, that were or that would otherwise have been subject to conservatory attachment orders obtained by ConocoPhillips under Dutch Caribbean law beginning on May 4, 2018.  Evidence of those actions is set out in a petition brought by ConocoPhillips before the United States District Court for the Southern District of Texas under 28 U.S.C. § 1782 (Case No. 4:18-mc-1757 (S.D. Tex. 2018)), by which ConocoPhillips sought discovery from CITGO for use in a fraudulent transfer action on Curaçao against PDVSA, CITGO and a local PDVSA subsidiary (the "Texas 1782 Petition").  The memorandum of law in support of the Texas 1782 Petition is appended hereto as Exhibit F and those allegations are incorporated as if set forth in full, herein.

**The Causes of Action Against the Helsinge Enterprise**

33.     PDVSA has alleged it discovered a longstanding conspiracy by a group of traders, oil companies, banks, and PDVSA employees that defrauded PDVSA out of billions of dollars. As set out in the Trust Complaint, the members of the Helsinge Enterprise allegedly hacked into

PDVSA's computer systems, fixed bids on commodities purchases and sales, corrupted and bribed PDVSA employees, and manufactured and manipulated commercial contracts with PDVSA, among other misconduct.

34.     As result, PDVSA has causes of action against the members of the Helsinge Enterprise.  The Trust Complaint states "to the extent that the misdeeds perpetrated by the Helsinge Enterprise resulted in underpayments to PDVSA for the sale of crude oil products and overpayments by PDVSA for the purchase of light hydrocarbon products, PDVSA suffered injury in the United States [and as] a result of this unlawful conduct and suppressed competition, PDVSA has suffered billions of dollars in losses."  Exhibit A at ¶¶ 135, 141.

## The PDVSA US Litigation Trust

35.     PDVSA wanted to pursue these valuable causes of action against the Helsinge Enterprise and to prosecute the claims alleged in the PDVSA Florida Action, but PDVSA perceived a problem.  If PDVSA asserted the claims in the United States and against US-based defendants, the right to proceeds from judgments against (or from settlement agreements with) members of the Helsinge Enterprise would be vulnerable to execution or garnishment by PDVSA's creditors.  And the choses in action themselves, as PDVSA's valuable intangible property situated in the United States, would be subject to execution by PDVSA's creditors.  Further, if PDVSA brought assets into the United States to fund the prosecution of the PDVSA Florida Action, those assets could be subject to execution by PDVSA's creditors.

36.     PDVSA consulted with advisors in New York to find a solution and to implement it.  Ultimately, PDVSA engaged the New York Law Firms to help create the New York Trust in July 2017 and transferred its causes of action into the New York Trust.  *See* Exhibit B at Recitals and Art. I.  When PDVSA created the New York Trust, it transferred "all of its respective rights,

title and interest" associated with its causes of action against the Helsinge Enterprise into the New York Trust. *See* Exhibit B at Art. II Sec. 2.2. Upon information and belief, PDVSA also gave an interest in the PDVSA Florida Action to Algamex in exchange for funding the fees, expenses, and costs of the New York Trust.

37.    According to the Trust Agreement, the New York Trust, by and through the Trustees, incurred the obligation to give the New York Law Firms up to 66% of any net recovery obtained in litigating PDVSA's causes of action. Annex A to the Trust Agreement, entitled "Definitions" states in relevant part that the New York Trust ". . . shall not receive more than 34% of the final amount of Proceeds." The Trust Agreement states elsewhere that "the Litigation Trustees shall distribute all Proceeds on hand to PDVSA" subject to certain conditions. *See* Exhibit B at Art. III Sec. 3.6(a). Accordingly, up to 34% of any share of the net recovery obtained by the New York Trust will eventually flow back to PDVSA. Further, upon information and belief, PDVSA presently is negotiating with Boies, Schiller and Algamex to increase its potential share of any net recovery obtained from litigating its causes of action.

38.    The stated purpose of the New York Trust is "to facilitate the prosecution and resolution of the [a]ssigned [a]ctions and to liquidate the Litigation Trust Assets with no objective to continue or engage in the conduct of a trade or business." *See* Exhibit B at Art. II Sec. 2.5(a). According to the Trust Agreement, "[t]he transfer of the Litigation Trust Assets to the Litigation Trust . . . is being made by PDVSA for the sole benefit, and on behalf of, PDVSA." *Id.* at Art. II Sec. 2.4. Accordingly, the New York Trust brought the PDVSA Florida Action against the members of the Helsinge Enterprise.

39.    Of course, those purposes would be readily served if PDVSA prosecuted the PDVSA Florida Action itself, without the New York Trust. But instead, the New York Trust was

created and PDVSA transferred its intangible property to the New York Trust. And, upon information and belief, PDVSA and/or the New York Trust also incurred obligations to Algamex. These transfers were made, and obligations incurred, with the intent to hinder, delay, or defraud PDVSA's creditors, including ConocoPhillips.

**PDVSA Cannot Pay Its Bills When Due**

40.    Numerous sources have reported that PDVSA is insolvent on a cash-flow basis. For example, in November 2017, the International Swaps and Derivatives Association declared PDVSA in default on some of its bonds. *See* Robin Wigglesworth, *Financial Times,* "ISDA declares Venezuela, PDVSA in default on their debts," Nov. 16, 2017. A true and correct copy of this article is appended hereto as Exhibit G.

41.    PDVSA is also behind on payments to vendors, contractors and others for services, maintenance, shipping, and other obligations. For example, in May 2018, White Beech SNC LLC brought an action before this Court against PDVSA for payment of approximately US $25 million in principal plus interest on a promissory note, that PDVSA had offered in satisfaction of a trade debt and allegedly then defaulted on (*see* Case No. 18-cv-04148 (S.D.N.Y. 2018)). PDVSA has reportedly been unable to pay licensing fees or required repair and maintenance payments to several Dutch Caribbean island nations where PDVSA stores and refines petroleum products. As a result, these governments have reportedly blocked PDVSA from removing products from the islands. *See* Gary McWilliams & Marianna Parraga, *Reuters,* "Venezuela's PDVSA At Risk Of Losing Bonaire Terminal Over Maintenance Delay," December 19, 2017. A true and correct copy of this article is appended hereto as Exhibit H. And PDVSA reportedly was forced to pay two of its service contractors, Schlumberger and Halliburton, via promissory notes rather than cash on more than US $1 billion in outstanding fees. Both service contractors immediately wrote down

the promissory notes by more than US $700 million in total.  *See* Liz Hampton, *Reuters*, "Halliburton, Schlumberger take hit on Venezuela bills in second quarter," July 25, 2017.  A true and correct copy of this article is appended hereto as Exhibit I.

42.    PDVSA faces numerous obligations coming due in the near future.  For example, PDVSA and Venezuela reportedly owe bondholders about US $9 billion coming due in this calendar year alone.  *See* Jason Mitchell, *LatinFinance,* "Bondholders brace for Venezuelan default," January 17, 2018.  A true and correct copy of this article is appended hereto as Exhibit J.

43.    Further, PDVSA reportedly delivers a majority of its crude to China and Russia as a form of in-kind payment to service nearly US $50 billion of outstanding debt.  *See Reuters* "Venezuela's deteriorating oil quality riles major refineries," October 18, 2017.  A true and correct copy of this article is appended hereto as Exhibit K.  These types of transactions have made PDVSA exceptionally cash poor at a time when PDVSA's oil production continues to decline due to a lack of funds for necessary investments.  *Id*.

## Count I:  Fraudulent Transfer (Actual Intent)

44.    All the above paragraphs are incorporated as if fully set forth herein.

45.    ConocoPhillips is a creditor of PDVSA within the meaning of § 270 of Article 10 of New York Debtor and Creditor Law because ConocoPhillips has a claim, "whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent," against PDVSA in the form of the ICC arbitration claim (which has resulted in the ICC Award).

46.    PDVSA conveyed valuable intangible property to the New York Trust in the form of PDVSA's causes of action against the members of the Helsinge Enterprise.  Upon information and belief, PDVSA transferred some of its interests in that property, or the proceeds therefrom, to Algamex, and/or caused the New York Trust to incur obligations to Algamex.

47.     PDVSA made those transfers and/or incurred those obligations with the actual intent to hinder, delay, or defraud its creditors, including ConocoPhillips.

### Count II:  Fraudulent Transfer (Constructive Fraudulent Transfer)

48.     All the above paragraphs are incorporated as if fully set forth herein.

49.     New York law provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debt & Cred. Law § 273.  New York law further provides that a transfer is "fraudulent" if a debtor makes a transfer "without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature."  N.Y. Debt & Cred. Law § 275.

50.     In the alternative to Count I, PDVSA's transfers and the obligations incurred were constructively fraudulent.

51.     PDVSA transferred its causes of action against the Helsinge Enterprise and its right to pursue the PDVSA Florida Action without fair consideration.  That PDVSA may be a beneficiary of the New York Trust is no consideration at all, since PDVSA would have been the beneficiary of its own claims to begin with.

52.     PDVSA made these transfers, incurred these obligations and/or caused the New York Trust to undertake these obligations when it knew or believed, and when it in fact had incurred and was incurring debts beyond its ability to pay them when due.

### Prayer

53.     The causes of action transferred to the New York Trust and currently being litigated in the PDVSA Florida Action and/or any proceeds resulting therefrom are in danger of being

dissipated, removed from the state of New York, lost, materially injured, or destroyed. Conservation of the causes of action, or any proceeds therefrom, through the appointment of a receiver, is necessary to prevent irreparable loss, damage, or material injury and to protect the interests of ConocoPhillips.

54.     ConocoPhillips seeks declaratory relief, the restraint of further transfers, the appointment of a receiver to take charge of the property of the New York Trust, the avoidance of interests transferred pursuant to the Trust Agreement and related agreements, and any other relief which the Court determines the circumstances of the case may require, including but not limited to all of the remedies available under Section 279 of New York Debtor and Creditor Law.


Dated: July 6, 2018                              Respectfully submitted,

                                                 /s/  Michael S. Kim

                                                 Michael S. Kim
                                                 Marcus J. Green
                                                 Melanie Oxhorn
                                                 Andrew Wang
                                                 KOBRE & KIM LLP
                                                 800 Third Avenue
                                                 New York, New York  10022
                                                 +1 212 488 1200
                                                 michael.kim@kobrekim.com
                                                 marcus.green@kobrekim.com
                                                 melanie.oxhorn@kobrekim.com
                                                 andrew.wang@kobrekim.com

                                                 D. Brian King (*pro hac vice pending*)
                                                 Elliot Friedman
                                                 Sam Prevatt
                                                 FRESHFIELDS BRUCKHAUS
                                                 DERINGER US LLP
                                                 601 Lexington Avenue 31st Floor
                                                 New York, New York 10022
                                                 +1 212 277 4000
                                                 Brian.King@freshfields.com

Elliot.Friedman@freshfields.com
Sam.Prevatt@freshfields.com

*Counsel for Plaintiffs ConocoPhillips
Petrozuata B.V. and Phillips Petroleum
Company Venezuela Limited*